### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM NALLY, JR. (N-51494), | ) | |
| | ) | |
| Plaintiff, | ) | Case No.    17 C 1551 |
| | ) | |
| v. | ) | **Honorable Sharon Johnson Coleman, Presiding** |
| | ) | |
| SALEH OBAISI, M.D., et al., | ) | **Honorable Mary M. Rowland, Magistrate** |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |

### AMENDED COMPLAINT

NOW COMES, the Plaintiff, WILLIAM NALLY, JR. (N-51494)("NALLY"), by and through his attorney, Scott A. Schimanski, and submits his Amended Complaint against the Defendants, SALEH OBAISI, M.D. ("DR. OBAISI"), RONALD SCHAEFER, M.D. ("DR. SHAEFER"), PARATHASARATHI GHOSH, M.D. ("DR. GHOSH"), RICHARD SHUTE, M.D. ("DR. SHUTE"), IMHOTEP CARTER, M.D. ("DR. CARTER") and WEXFORD HEALTH SOURCES, INC. ("WEXFORD")(collectively "Defendants"), alleging and stating as follows:

#### Introduction

1.     NALLY brings this action against Defendants seeking redress for the violation of rights secured by the Eighth and Fourteenth Amendments to the Constitution of the United States of America pursuant to 42 U.S.C. § 1983 for cruel and unusual punishment, for deliberate indifference and for failure to provide adequate medical care to diagnose, treat and alleviate the severe pain and suffering endured by NALLY as a result of serious upper abdominal medical conditions.

1

**Jurisdiction and Venue**

2.      This is a civil action under 42 U.S.C. § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving NALLY of rights secured under the Constitution and laws of the United States of America and for refusing or neglecting to prevent such deprivations and denials to NALLY.

3.      This case arises under the Constitution of the United States of America and 42 U.S.C. § 1983. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution of the United States of America.

4.      NALLY brings this action resulting from damages sustained due to the failure of Defendants to provide adequate medical care to diagnose, treat and alleviate the severe pain and suffering endured by NALLY as a result of serious upper abdominal medication conditions.

5.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b) because the actions, inaction and omissions complained of took place in the Northern District of Illinois, evidence and records relevant to the allegations are maintained in the Northern District of Illinois and Defendants are employed and/or conduct business in the Northern District of Illinois.

6.      This Court has authority pursuant to 42 U.S.C. § 1983 to award injunctive relief and appropriate actual, consequential, compensatory and punitive damages, as well as, authority pursuant to 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and authority under 42 U.S.C. § 1988 to award attorney fees and costs.

7.      NALLY is a citizen and resident of the United States of America and the State of Illinois.

## Parties

8.     NALLY, at all relevant times, has been incarcerated by the State of Illinois in the Illinois Department of Corrections ("IDOC") at the Stateville Correctional Center, 16830 South Broadway Street, P.O. Box 112, Joliet, Illinois 60434 ("Stateville") and is a citizen and resident of the United States of America and the State of Illinois.  NALLY has no ability to select or provide for his own medical care and is completely dependent on the State of Illinois, IDOC and WEXFORD for the provision of medical care.

9.     DR. OBAISI, at all relevant times, was a physician licensed to practice medicine in the State of Illinois and at times the medical director at Stateville and a treating physician of NALLY.  DR. OBAISI, at all relevant times, was an employee of WEXFORD, the medical service provider for IDOC.  DR. OBAISI, at all relevant times, was acting under the color of state law.  DR. OBAISI, at all relevant times, was in charge, and direct control, of the provision of constitutionally adequate healthcare to the inmates at Stateville.  DR. OBAISI is being sued in his individual and official capacity.

10.     DR. SCHAEFER, at all relevant times, was a physician licensed to practice medicine in the State of Illinois and a treating physician of NALLY.  DR. SCHAEFER, at all relevant times, was an employee of WEXFORD, the medical service provider for IDOC.  DR. SCHAEFER, at all relevant times, was acting under the color of state law.  DR. SCHAEFER, at all relevant times, was in charge, and direct control, of the provision of constitutionally adequate healthcare to the inmates at Stateville.  DR. SCHAEFER is being sued in his individual and official capacity.

11.     DR. GHOSH, at all relevant times, was a physician licensed to practice medicine in the State of Illinois and at times the medical director at Stateville and a treating physician of NALLY.  DR. GHOSH, at all relevant times, was an employee of WEXFORD, the medical

service provider for IDOC. DR. GHOSH, at all relevant times, was acting under the color of state law. DR. GHOSH, at all relevant times, was in charge, and direct control, of the provision of constitutionally adequate healthcare to the inmates at Stateville. DR. GHOSH is being sued in his individual and official capacity.

12.     DR. SHUTE, at all relevant times, was a physician licensed to practice medicine in the State of Illinois and a treating physician of NALLY. DR. SHUTE, at all relevant times, was an employee of WEXFORD, the medical service provider for IDOC. DR. SHUTE, at all relevant times, was acting under the color of state law. DR. SHUTE, at all relevant times, was in charge, and direct control, of the provision of constitutionally adequate healthcare to the inmates at Stateville. DR. SHUTE is being sued in his individual and official capacity.

13.     DR. CARTER, at all relevant times, was a physician licensed to practice medicine in the State of Illinois and at times the medical director at Stateville and a treating physician of NALLY. DR. CARTER, at all relevant times, was an employee of WEXFORD, the medical service provider for IDOC. DR. CARTER, at all relevant times, was acting under the color of state law. DR. CARTER, at all relevant times, was in charge, and direct control, of the provision of constitutionally adequate healthcare to the inmates at Stateville. DR. CARTER is being sued in his individual and official capacity.

14.     WEXFORD is a for-profit corporation whose principal place of business is located in Pittsburgh, Pennsylvania. At all relevant times, WEXFORD was engaged in the practice of medicine and provided health care professionals to IDOC through a contract with the State of Illinois to provide all health care services to IDOC and inmates at Stateville, including NALLY. At all relevant times, WEXFORD provided health care services to inmates at Stateville through physicians and others that it employed or with which it had contracts. At all relevant times, WEXFORD was responsible for ensuring that adequate medical care and treatment was

4

provide to inmates at Stateville; for hiring, training and supervising all healthcare providers at WEXFORD; and for establishing and implementing policies and procedures pertaining to inmate healthcare. At all relevant times, WEXFORD was the exclusive provider of medical care for inmates at Stateville, including NALLY. At all relevant times, WEXWORD was acting under color of state law. WEXFORD is being sued in its individual and official capacity.

**Facts**

15. In early December of 2010, NALLY began experiencing severe upper abdominal pain.

16. In early December of 2010, immediately after NALLY first experienced severe upper abdominal pains NALLY made contact with institutional medical technicians at Stateville and informed same of his severe upper abdominal pains.

17. On December 8, 2010, NALLY was taken to see DR. SHAEFER and NALLY informed DR. SHAEFER that he was experiencing severe upper abdominal pain. NALLY received no diagnosis, treatment or pain relief from DR. SHAEFER.

18. On December 16, 2010, NALLY was taken to see DR. SHAEFER and NALLY informed DR. SHAEFER that he was experiencing severe lower abdominal pain, as well as, continued upper abdominal pain. DR. SHAEFER ordered lab tests to be completed, prescribed Zantac and Tums and scheduled a follow-up appointment in three (3) weeks.

19. On December 22, 2010, lab tests were completed as ordered by DR. SHAEFER on December 16, 2010.

20. On January 16, 2011, NALLY was taken to see DR. SHAEFER in the diabetic clinic and NALLY discussed the severe lower abdominal pains and the test results from December 22, 2010. DR. SHAEFER prescribed Omeprazole and ordered an x-ray examination. NALLY informed DR. SHAEFER that he was still experiencing severe upper abdominal pain

but NALLY received no diagnosis, treatment or pain relief from DR. SHAEFER for his severe upper abdominal pain.

21.     The Omeprazole prescribed by DR. SHAEFER on January 16, 2011, did not alleviate the severe lower abdominal pain or the severe upper abdominal pain.

22.     The x-ray ordered by DR. SHAEFER on January 16, 2011, was negative.

23.     On April 5, 2011, NALLY received a copy of medical records and discovered that DR. GHOSH had not been recording his complaints about his severe upper abdominal pains in his medical records despite NALLY having made several complaints to DR. GHOSH about severe upper abdominal pain.  DR. GHOSH never provided any diagnosis, treatment or pain relief to NALLY for his severe upper abdominal pain.

24.     On April 14, 2011, NALLY was taken to see DR. SHUTE, who at the time was the acting medical director, regarding his severe upper abdominal pains.  DR. SHUTE provided NALLY with a thirty (30) day low bank/low gallery medical permit and referred NALLY for a lower abdominal ultrasound.

25.     On May 23, 2011, NALLY was taken to see DR. SHUTE for a follow-up appointment from April 14, 2011, and DR. SHUTE denied NALLY a second thirty (30) day low bank/low gallery medical permit.  DR. SHUTE did not provide any diagnosis, treatment or pain relief for the severe upper abdominal pain being experienced by NALLY.

26.     On September 20, 2011, NALLY was taken to see DR. SHAEFER and informed DR. SHAEFER that he was still experiencing severe upper abdominal pain that he reported in December of 2010, and that the pain had become progressively worse.  DR. SHAEFER prescribed Omeprazole and NALLY informed DR. SHAEFER that the same medication had been prescribed in January of 2011, to address his lower abdominal pain and that Omeprazole did not alleviate any of the abdominal pain, including specifically the upper abdominal pain.  DR.

6

SHAEFER informed NALLY that he would refer the matter to the medical director. NALLY received no diagnosis, treatment or pain relief from DR. SHAEFER.

27.     On October 3, 2011, NALLY was taken to see DR. CARTER, who was the medical director at the time, to address his severe upper abdominal pains. DR. CARTER prescribed pain medication but provided no diagnosis or treatment.

28.     The pain medication prescribed by DR. CARTER on October 3, 2011, did not alleviate the severe upper abdominal pain.

29.     On March 8, 2012, NALLY was taken to the healthcare unit at Stateville by Sergeant L. Palmer because he was experiencing severe upper abdominal pain. At the healthcare unit NALLY was seen by Dr. Dubrick. Dr. Dubrick reviewed medical records and determined that the Metformen that NALLY had been prescribed and was taking for his diabetes along with liver disease condition could be the cause of NALLY's abdominal pain. Dr. Dubrick changed NALLY's diabetes treatment and prescribed insulin shots instead of Metformen.

30.     The treatment prescribed by Dr. Dubrick on March 8, 2012, caused the upper abdominal pain to slightly subside but NALLY remained in severe upper abdominal pain.

31.     On January 7, 2013, NALLY was taken to the University of Illinois-Chicago Hospital ("UIC Hospital") to have a CT scan performed on his liver, kidney and pancreas. NALLY was informed by the treating physician that he had very serious medical issues that required additional testing and procedures. The treating physician at UIC Hospital scheduled additional tests and procedures for ten (10) days later. NALLY informed the treating physician at UIC Hospital about his persistent and severe upper abdominal pains and the treating physician prescribed 100 mg of the pain medication Tramadol.

32.     The Tramadol medication prescribed by the UIC Hospital treating physician on January 7, 2013, did alleviate the severe upper abdominal pain.

7

33.     NALLY was not able to return the UIC Hospital for the follow-up appointment scheduled on January 7, 2013, through no fault of his own, the appointment was not re-scheduled and the further testing and procedures ordered by the treating physician at UIC Hospital on January 7, 2013, never occurred.

34.     On March 28, 2013, NALLY filed a grievance concerning his severe upper abdominal pain, along with blood observed in his stool and on the tissue at the use of the bathroom.  NALLY also complained that his passes to see the medical director and urgent care facility had been cancelled for March 1, 2013, March 12, 2013 and March 28, 2013.

35.     On June 23, 2013, NALLY experienced severe abdominal pain because his prescription for the pain medication Tramadol had run out.

36.     On June 24, 2013, the Tramadol pain medication prescription provided to NALLY was renewed and the severe upper abdominal pain was alleviated.

37.     On July 21, 2013, NALLY was informed by a nurse that his Tramadol pain medication had been ordered to be discontinued despite a prescription that was not scheduled to expire until July 24, 2013.

38.     On October 21, 2013, NALLY was taken to the UIC Hospital and the consulting physician suggested that he continue to use the Tramadol pain medication.

39.     On January 21, 2014, Dr. Ann Davis renewed NALLY's prescription for 100 mg of Tramadol for ninety (90) days.

40.     Between July 21, 2013, and January 21, 2014, NALLY suffered severe upper abdominal pain without relief due to the discontinuation of the Tramadol pain medication.

41.     On April 21, 2014, DR. OBAISI renewed NALLY's prescription for 100 mg of Tramadol for sixty (60) days.

42.     On June 23, 2014, NALLY's prescription for the Tramadol pain medication was renewed for sixty (60) days.

43.      On August 15, 2014, DR. OBAISI prescribed NALLY 100 mg of Tramadol for ninety (90) days.

44.     On November 17, 2014, DR. OBAISI renewed NALLY's prescription for 100 mg of Tramadol for thirty (30) days.

45.     On December 18, 2014, DR. OBAISI reduced NALLY's prescription for Tramadol to 50 mg for thirty (30) days.  DR. OBAISI informed NALLY that the reason his prescription for Tramadol was being reduced was because Tramadol had been recently classified as a narcotic by the State of Illinois.

46.     The prescribed dosage level of 50 mg of Tramadol was not effective in reducing the severe upper abdominal pain experienced by NALLY.

47.      100 mg of Tramadol was still being prescribed to other inmates.

48.     On January 17, 2015, NALLY's Tramadol prescription expired.

49.     On January 31, 2015, NALLY was taken to see DR. OBAISI for a physical examination.  NALLY informed DR. OBAISI of his continued severe upper abdominal pain and requested that DR. OBAISI prescribe 100 mg of Tramadol because that was the only pain medication that had alleviated the severe upper abdominal pain.  DR. OBAISI refused to prescribe Tramadol stating that he could not prescribe narcotics anymore.  DR. OBAISI offered to prescribe Tylenol 3 despite having previously informed NALLY that Tylenol 3 would further damage his liver and despite being aware that Dr. Dubrick, DR. SHUTE and DR. CARTER had all previously informed NALLY that Tylenol 3 was not a proper pain medication for patients with Hepatitis C such as NALLY.

9

50.     DR. OBAISI, and others, were still prescribing narcotics, including Tramadol to inmates.

51.     On March 3, 2015, NALLY was taken to see DR. OBAISI suffering from severe upper abdominal pain. NALLY requested that DR. OBAISI prescribe 100 mg of Tramadol because that was the only pain medication that had alleviated the severe upper abdominal pain. DR. OBAISI refused to prescribe Tramadol stating that the federal government and the State of Illinois did not want IDOC health care providers to prescribe Tramadol anymore.  DR. OBAISI offered to prescribe Tylenol 3 despite having previously informed NALLY that Tylenol 3 would further damage his liver and despite being aware that Dr. Dubrick, DR. SHUTE and DR. CARTER had all previously informed NALLY that Tylenol 3 was not a proper pain medication for patients with Hepatitis C such as NALLY.  DR. OBAISI prescribed Ibuprofen.

52.     DR. OBAISI, and others, were still prescribing Tramadol to inmates.

53.     The Ibuprofen prescribed by DR. OBAISI did nothing to alleviate the severe upper abdominal pain.

54.     Between January 18, 2015 and January 22, 2016, NALLY continued to experience severe upper abdominal pain and was prescribed no pain medication or no effective pain medication.

55.     On January 22, 2016, Dr. Martija prescribed 100 mg of Tramadol for NALLY for seven (7) days.

56.     On June 9, 2016, NALLY was taken to see DR. OBAISI and informed DR. OBAISI that he was still experiencing severe upper abdominal pain.  DR. OBAISI informed NALLY that his upper abdominal issue was something they "don't really do anything about."

57.     On June 15, 2016, NALLY was taken to see DR. OBAISI and informed DR. OBAISI that he was still experiencing severe upper abdominal pain.  DR. OBAISI prescribed "Pepsid" and antacid medication.

58.     The Pepsid did nothing to alleviate the severe upper abdominal pain.

59.     On July 11, 2016, NALLY was taken to see a nurse because of his severe upper abdominal pain.  The nurse did nothing to alleviate the pain.

60.     Since December 8, 2010, NALLY has developed a visible, huge circular lump protruding from his upper abdominal area that is approximately five inches (5") in diameter that causes severe pain and discomfort.  NALLY has reported the lump to all of the Defendants, including specifically DR. OBAISI, but the Defendants have refused to provide any care for the lump.

61.     Since January 30, 2016, NALLY has been experiencing severe upper abdominal pain without any pain medication.

62.     Since December 8, 2010, NALLY has been experiencing severe upper abdominal pain without any diagnosis or treatment.

63.     The severe upper abdominal pain is a serious medical condition.

64.     The upper abdominal lump is a serious medical condition.

65.     NALLY made repeated requests for medical care for the severe upper abdominal pain and lump, including requests for diagnosis, treatment and pain relief.

66.     Despite the repeated requests for medical care for the severe upper abdominal pain and lump, including requests for diagnosis, treatment and pain relief made by NALLY no diagnosis has been made, treatment administered or pain relief provided.

67.     Each and all Defendants had actual knowledge of the severe upper abdominal lump and pain and serious medical condition of NALLY and his need for medical treatment.

11

68.     WEXFORD has unconstitutional policies and procedures that have adopted and or otherwise foster customs and an environment of deliberate indifference to known or obvious consequences of its practices including the following:

a.     require employees to deny medical care due to budgetary constraints causing unnecessary delay in the provision of essential medical treatment resulting in severe pain and suffering of inmates (See McDonald v. Wexford Health Sources, No. 09 C 4196, 2010 WL 3034529, at * 3 (N.D.Ill. July 30, 2010)(Plaintiff's allegation as to Defendant Wexford is that it instituted a custom and policy of cost cutting measures.); Liebich v. Hardy, No. 11 C 5624, 2013 WL 4476132, at *6 (N.D.Ill. Aug. 19, 2013 )(Plaintiff alleges that Wexford has in place a policy that required its employees to deny medical care due to budgetary constraints.); Harper v. Wexford Health Sources, Inc., No. 14 C 4879, 2017 WL 2672299, at *3 (N.D.Ill. June 21, 2017)(Harper alleges Wexford's policy of cost-cutting has prevented him from receiving adequate and timely medical treatment, in willful indifference or disregard to his acute pain and suffering.); Smith v. Wexford Health Sources, Inc., No. 16 C 3437, 2016 WL 7116586, at &2 (N.D.Ill. Dec. 7, 2016)(Plaintiff alleges that the physicians who work on behalf of Wexford and under the direction of Dr. Obaisi have been deliberately indifferent to his medical needs as a part of a policy and practice designed to reduce medical costs.); Watkins v. Ghosh, No. 11 C 1880, 2011 WL 5981006, at *8 (N.D.Ill. Nov. 28, 2011)(Watkins has sufficiently stated a claim of deliberate indifference by Wexford because he alleges that Wexford, in an effort to cut costs, has a widespread practice of understaffing Stateville so that prisoners are unable to obtain the treatment that they require.);

b.     require employees to not refer inmates with serious medical needs to off-site specialists for evaluation and treatment, even when requested by inmates;

12

c.      require employees to ignore or otherwise minimize inmates serious medical needs

which might require off-site evaluations and treatment, as well as, any orders and

recommendations made by off-site specialists for treatment and evaluation;

d.      maintain insufficient staffing levels for medical personnel to provide adequate and

effective medical care;

e.      fail to properly process requests for medical care submitted by inmates;

f.      fail to properly train and supervise employees;

g.      fail to discipline employees that neglected inmates serious medical needs;

h.      fail to require proper documentation of inmate complaints and requests for

treatment;

i.      fail to properly provide pain medication; and

j.      delay or cancel scheduled appointments;

69.     WEXFORD had access to NALLY's medical records providing sufficient

knowledge or reason to have knowledge of the serious medical condition for which NALLY had

requested diagnosis, treatment and pain relief and the actions, inaction and omissions that

occurred.

70.     Defendants failed to provide necessary and essential medical care to NALLY and

document each and all of his complaints and requests for medical care because it would be too

costly to diagnose, treat and provide proper pain relief to NALLY for his sever upper abdominal

conditions and pain.

71.     Each and all of Defendants were acting within the scope of their employment and

under color of law in committing the actions, inaction or omissions described herein.

72.     Each and all of Defendants had specific knowledge of the serious medical need of

NALLY.

13

73.     Each and all of Defendants actions, inaction and omissions showed a deliberate indifference to NALLY's serious medical needs all of which caused harm to NALLY.

74.     Each and all of the actions, inaction and omissions violated NALLY's rights guaranteed by the Fourteenth and Eighth Amendments to the Constitution of the United States of America, including the right to be free from the infliction of cruel and unusual punishment.

75.     There is an actual controversy between NALLY and Defendants.

**Exhaustion of Administrative Remedies**

76.     NALLY has exhausted all of the administrative remedies available to him with respect to each and all of the claims asserted herein against each and all Defendants prior to the filing of the instant proceeding.

**Count I**
**42 U.S.C. § 1983 (Individual Liability)**

77.     NALLY realleges and incorporates the allegations contained in paragraphs 1 through 76 as if set forth herein as paragraph 77 of Count I.

78.     Defendants have been deliberately indifferent to NALLY's severe upper abdominal pain and upper abdominal lump having actual knowledge of a substantial risk of harm, including but not limited to substantial pain and suffering and Defendants consciously disregarded the risks by failing to take reasonable measures to provide NALLY with medical treatment.

79.     Defendants refused to provide, and/or otherwise delayed providing, NALLY necessary medical treatment for an extended period of time and by failing to provide adequate medical treatment to alleviate the severe pain NALLY has suffered and continues to suffer, including the failure to provide any diagnosis or treatment for the serious upper abdominal

14

medical condition, thereby displaying and showing a deliberate indifference to NALLY's serious medical needs and causing harm to NALLY.

80.     Defendants refused to provide NALLY with effective pain management and pain medication, including specifically refusing to provide Tramadol, despite knowing that Tramadol is the sole medication that alleviating the severe upper abdominal pain and despite having previously prescribed Tramadol to NALLY, as well as, continuing to prescribe Tramadol to other inmates.

81.     Defendants have persisted in a course of treatment will full knowledge that the treatment and lack thereof is entirely ineffective and has done nothing to alleviate the severe pain suffered by NALLY or to diagnose or treat the serious medical condition.

82.     Defendants actions, inaction and omissions have deprived NALLY of necessary and adequate medical care and endangered NALLY's health and well-being.

83.     Defendants, actions, inactions and omissions have prevented NALLY from obtaining necessary and essential medical treatment and care and have prevented necessary and essential medical treatment and care from reaching NALLY thereby endangering NALLY's health and well-being.

84.     Defendants action, inaction and omissions were reckless, intentional and reflect a callous indifference to NALLY's health and well-being.

85.     The actions, inaction and omissions of Defendants violated NALLY's right to be free from the infliction of cruel and unusual punishment as guaranteed by the Eighth Amendment of the Constitution of the United States of America.

86.     As a direct result of the actions, inaction and omissions of Defendants NALLY has suffered and continues to suffer in severe pain from the upper abdominal conditions.

15

87. The actions, inaction and omissions of Defendants has resulted in actual injury to NALLY.

88. As a direct and proximate result of the actions, inaction and omissions of Defendants NALLY has suffered, and continues to suffer, damages the exact extent of same to be proven at trial.

89. The actions, inactions and omissions of Defendants were willful, extreme and outrageous.

90. NALLY lacks an adequate remedy at law for the future pain and suffering he will have to endure if he does not have the serious medical condition of his severe upper abdominal pain and the lump diagnosed and treated and if he does not receive adequate pain relief.

91. NALLY will suffer irreparable continuing injury if he does not have the serious medical condition of his severe upper abdominal pain and the lump diagnosed and treated and if he does not receive adequate pain relief, as well as, regular treatment and permanent prescription pain relief medication with timely refills.

WHEREFORE, the Plaintiff, WILLIAM NALLY, JR. (N-51494), respectfully requests that this Honorable Court enter an Order granting the following relief:

1. Declaratory judgment against the Defendants providing the following:

a. The Defendants failure to locate the source of NALLY's severe upper abdominal pain diagnose the serious medical issue and provide treatment violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution;

b. The Defendants failure to provide NALLY with effective pain management violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution;

c.     The Defendants course of treatment without diagnosis and otherwise for the severe upper abdominal pain suffered by NALLY violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution; and

d.     The Defendants failure to provide NALLY with continuous and effective pain relief and pain relieving medication violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution.

2.     Injunction against the Defendants providing the following:

a.     Require that NALLY be provided treatment by specialists other than the Defendants to locate the source of NALLY's severe upper abdominal pain, diagnose the serious medical issue and provide an appropriate course of treatment;

b.     Require that NALLY be immediately provided pain medication that alleviates the severe upper abdominal pain and allows NALLY effective pain relief;

c.     Require that NALLY not be without effective pain relief and pain medication due to prescription expiration dates until an alternative pain remedy has been implemented.

3.     Compensatory damages to NALLY in the amount of $250,000.00 against each Defendant for depriving NALLY of medical care and causing NALLY pain and suffering.

4.     Punitive damages to NALLY in the amount of $500,000.00 against each Defendant for the extreme and outrageous conduct in depriving NALLY of medical care and causing NALLY pain and suffering.

5.     Such other relief that is appropriate under the circumstances.

**Count II**
**42 U.S.C. § 1983 (Official Liability)**

77.     NALLY realleges and incorporates the allegations contained in paragraphs 1 through 76 as if set forth herein as paragraph 77 of Count II.

17

78.     Defendants have been deliberately indifferent to NALLY's severe upper abdominal pain and upper abdominal lump having actual knowledge of a substantial risk of harm, including but not limited to substantial pain and suffering and Defendants consciously disregarded the risks by failing to take reasonable measures to provide NALLY with medical treatment.

79.     Defendants refused to provide, and/or otherwise delayed providing, NALLY necessary medical treatment for an extended period of time and by failing to provide adequate medical treatment to alleviate the severe pain NALLY has suffered and continues to suffer, including the failure to provide any diagnosis or treatment for the serious upper abdominal medical condition, thereby displaying and showing a deliberate indifference to NALLY's serious medical needs and causing harm to NALLY.

80.     Defendants refused to provide NALLY with effective pain management and pain medication, including specifically refusing to provide Tramadol, despite knowing that Tramadol is the sole medication that alleviating the severe upper abdominal pain and despite having previously prescribed Tramadol to NALLY, as well as, continuing to prescribe Tramadol to other inmates.

81.     Defendants have persisted in a course of treatment will full knowledge that the treatment and lack thereof is entirely ineffective and has done nothing to alleviate the severe pain suffered by NALLY or to diagnose or treat the serious medical condition.

82.     Defendants actions, inaction and omissions have deprived NALLY of necessary and adequate medical care and endangered NALLY's health and well-being.

83.     Defendants, actions, inactions and omissions have prevented NALLY from obtaining necessary and essential medical treatment and care and have prevented necessary and

essential medical treatment and care from reaching NALLY thereby endangering NALLY's health and well-being.

84.     Defendants action, inaction and omissions were reckless, intentional and reflect a callous indifference to NALLY's health and well-being.

85.     The actions, inaction and omissions of Defendants violated NALLY's right to be free from the infliction of cruel and unusual punishment as guaranteed by the Eighth Amendment of the Constitution of the United States of America.

86.     As a direct result of the actions, inaction and omissions of Defendants NALLY has suffered and continues to suffer in severe pain from the upper abdominal conditions.

87.     The actions, inaction and omissions of Defendants has resulted in actual injury to NALLY.

88.     As a direct and proximate result of the actions, inaction and omissions of Defendants NALLY has suffered, and continues to suffer, damages the exact extent of same to be proven at trial.

89.     The actions, inactions and omissions of Defendants were willful, extreme and outrageous.

90.     NALLY lacks an adequate remedy at law for the future pain and suffering he will have to endure if he does not have the serious medical condition of his severe upper abdominal pain and the lump diagnosed and treated and if he does not receive adequate pain relief.

91.     NALLY will suffer irreparable continuing injury if he does not have the serious medical condition of his severe upper abdominal pain and the lump diagnosed and treated and if he does not receive adequate pain relief, as well as, regular treatment and permanent prescription pain relief medication with timely refills.

WHEREFORE, the Plaintiff, WILLIAM NALLY, JR. (N-51494), respectfully requests that this Honorable Court enter an Order granting the following relief:

1.        Declaratory judgment against the Defendants providing the following:

a.        The Defendants failure to locate the source of NALLY's severe upper abdominal condition and pain and diagnose the serious medical issue and provide treatment violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution;

b.        The Defendants failure to provide NALLY with effective pain management violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution;

c.        The Defendants course of treatment without diagnosis and otherwise for the severe upper abdominal condition and pain suffered by NALLY violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution; and

d.        The Defendants failure to provide NALLY with continuous and effective pain relief and pain relieving medication violated NALLY's rights under the Fourteenth and Eighth Amendments to the United States Constitution.

2.        Injunction against the Defendants providing the following:

a.        Require that NALLY be provided treatment by specialists other than the Defendants to locate the source of NALLY's severe upper abdominal condition and pain, diagnose the serious medical issue and provide an appropriate course of treatment;

b.        Require that NALLY be immediately provided pain medication that alleviates the severe upper abdominal pain and allows NALLY effective pain relief;

c.        Require that NALLY not be without effective pain relief and pain medication due to prescription expiration dates until an alternative pain remedy has been implemented.

3.     Compensatory damages to NALLY in the amount of $250,000.00 against each

Defendant for depriving NALLY of medical care and causing NALLY pain and suffering.

4.     Punitive damages to NALLY in the amount of $250,000.00 against each

Defendant for the willful, extreme and outrageous conduct in depriving NALLY of medical care

and causing NALLY pain and suffering.

5.     Such other relief that is appropriate under the circumstances.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), NALLY demands trial by jury for all

of the issues pled so triable.

Respectfully submitted,
William Nally, Jr. (N-51494),
By:   /s/   Scott A. Schimanski
         One of his Attorneys


Scott A. Schimanski
Law Office of Scott A. Schimanski
901 Butterfield Circle West
Shorewood, Illinois 60404
(815) 741-9901
Attorney Number:  6243826
scott_schimanski@yahoo.com


**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and accurate copy of the Amended
Complaint was served through the Clerk of the Court using the CM/ECF system on October 10,
2017, to:

Illinois Department of Corrections
100 West Randolph Street, Suite 4-200
Chicago, Illinois 60601


/s/   Scott A. Schimanski

21